UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Grimsrud-Barnes, Inc., a Minnesota corporation, | Court No. |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>*(Jury Trial Demanded)* |
| Lucky Top, Inc. d/b/a HeyDude, a Nevada corporation, and Crocs, Inc., a Delaware corporation, | |
| Defendants. | |

---

**COMES NOW**, the Plaintiff, Grimsrud-Barnes, Inc. ("Grimsrud-Barnes"), for its claims against Defendants, Lucky Top, Inc. d/b/a HeyDude ("Lucky Top") and Crocs, Inc. ("Crocs"), stating and alleging as follows:

**PARTIES AND JURISDICTION.**

1. Plaintiff, Grimsrud-Barnes, Inc., is a Minnesota corporation, with its principal place of business located in the City of St. Paul, Ramsey County, Minnesota. Grimsrud-Barnes is a multi-line, independent sales agency, working on a commission basis, marketing and selling the products of manufacturers and importers in the footwear industry. Grimsrud-Barnes is an "independent sales representative" as that term is defined by Minn. Stat. §325E.37, Subdivision 1.

2. Defendant, Lucky Top, Inc. d/b/a HeyDude is a Nevada corporation, which used to maintain its principal place of business located in Las Vegas, Nevada. HeyDude was in business as a designer, manufacturer, importer, and marketer of casual footwear products, primarily under the HEYDUDE marks and logos. Upon information

1

and belief, on or about April 1, 2022, all of the stock of Defendant, Lucky Top, was acquired by Defendant, Crocs, Inc. Upon further information and belief, Crocs continues to operate Lucky Top as a wholly owned subsidiary. Since this acquisition, substantially all of the administrative and management affairs of Lucky Top have been transferred from Las Vegas, Nevada to Crocs' headquarters in Broomfield, Colorado.

3. Defendant, Crocs, Inc., is a Delaware corporation, with its principal place of business located in Broomfield, Colorado. Crocs is in the business of designing, manufacturing, importing, marketing, and selling a wide variety of casual footwear products, most famously those foam molded clogs, marketed and sold using the CROCS marks and logos.

4. At all times relevant to this complaint, Defendants have had a contractual relationship with Grimsrud-Barnes, a resident of the State of Minnesota. Defendants have also enjoyed the substantial benefits of Grimsrud-Barnes's efforts which included making millions of dollars in sales of Defendants' products to retail store and other accounts in its multi-state, Midwestern territory, that at all times included the State of Minnesota. Defendants' employees routinely visited Minnesota for the purpose of meeting with Grimsrud-Barnes employees and with the buying staff Plaintiff's various retail accounts. Finally, because the gravamen of this complaint involves unpaid commissions on sales made by Plaintiff of Defendants' products, many of which were sales to Minnesota accounts, there are significant "claims related" contacts with the State of Minnesota. As a result, the Court's exercise of personal jurisdiction over Defendants is proper.

5. Because there is complete diversity of citizenship between Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00 this Court has diversity subject matter jurisdiction, pursuant to 28 USC §1332(a).

6. Because this Court has personal jurisdiction over Defendants and many of the events giving rise to the allegations and claims in this case transpired in the State of Minnesota and this district, venue is also proper, per 28 USC §1391(b).

7. Pursuant to Fed.R.Civ.P. 38, Grimsrud-Barnes demands a jury trial.

## FACTS COMMON TO ALL COUNTS.

8. In May 2016, Lucky Top hired Grimsrud-Barnes to work as its independent sales representative, marketing and selling its line of casual footwear to Grimsrud-Barnes' well-established retail accounts. The parties agreed that Grimsrud-Barnes would sell Lucky Top's products to retail accounts in a multi-state, Midwestern territory, which included the State of Minnesota. At the time it retained Grimsrud-Barnes, Lucky Top had little business in the Midwestern states assigned to Plaintiff, so Grimsrud-Barnes was charged with pioneering this new business with its network of established accounts.

9. Throughout their relationship, the parties' business relationship was governed by various written Sales Representative Agreements ("SAR"), the last of these being executed in August 2021. The essential material terms of the parties' latest SAR were that Lucky Top agreed to pay Grimsrud-Barnes a variable commission of between 8% and 1% on all sales of its products to retail store accounts in Grimsrud-Barnes's assigned, exclusive territory. Commissions would be paid on Lucky Top's receipt of payment from the customer, less any adjustments for bad accounts, product returns or

3

other approved and customary discounts and markdowns. The parties' last SAR was for an indefinite duration.

10.  The parties' contract constituted an "independent sales representative agreement" as that term is defined by Minn. Stat. §325E.37, Subd. 1. The term of the final 2021 SRA was indefinite.

11.  During the parties' relationship, Grimsrud-Barnes had amazing success marketing and selling Lucky Top's products. This is reflected by the fact that, in 2021, Grimsrud-Barnes booked over $75 Million in sales for Lucky Top and earned commissions of more than $1.7 Million.

12.  As is true with all major, imported product lines sold to mass merchant and large store accounts, the business is written and orders are placed by customers for an entire year in advance of shipment, receipt and payment for the products received, and this is true of Lucky Top's 2022 business. By December 2021, Plaintiff had written substantially all of the business with its retail store account customers for delivery through Q4 2022.

13.  At the end of December 2021, Lucky Top's CEO, Daniele Guidi, held a sales meeting with all of Lucky Top's sales team, including its independent sales representatives, like Grimsrud-Barnes. During this meeting, Guidi confirmed that he had entered into an agreement to sell all of the stock in Lucky Top to Crocs, in a deal worth more than $2.5 Billion, with the expectation that the sale would close in March 2022.

14.  In order to assure that the sales representatives, including Grimsrud-Barnes, would continue working to monitor and fulfill pending Lucky Top business with their customers through this transition, Guidi promised the sales representatives that

4

Lucky Top would "guarantee" that their existing 2022 orders would all ship, and that Lucky Top would pay commission on those orders through Q4 2022 delivery. To confirm this, Lucky Top provided Grimsrud-Barnes with a report detailing all of its pending 2022 open order book.

15. Again, following this meeting, Guidi sent all of the sales representatives, including Grimsrud-Barnes an email, confirming this guarantee, and stating in relevant part:

> We want to thank our sales team for your contributions over the years to build the business and we were careful to take care of you in the process and to support your sales efforts to the Crocs team.
>
> Given that, we want to assure you that all 2022 orders will still ship as planned, with guaranteed commissions per the 2022 commission structure. And 2022, Q4 bookings upcoming, will be included in that guarantee.

Relying on this promise, Grimsrud-Barnes continued working, business as usual through the first quarter of 2022, assuring that Lucky Top's Spring business rolled out smoothly.

16. At the time Guidi made his oral and written guarantee to Grimsrud-Barnes it had 2022 business, booked and in house, totaling more than $115 Million, for which it would be owed commission of approximately $3.2 Million.

17. Upon closing of the sale of Lucky Top, Crocs named Rick Blackshaw as the executive vice president in charge of Crocs' new, wholly owned division, Lucky Top. Simultaneously, Crocs became jointly and severally liable for any and all Lucky Top contractual liabilities, including the guarantee to the Lucky Top sales representatives, like Grimsrud-Barnes.

18. Then, on or about March 29, 2022, without prior warning or good cause, as required by Minnesota law, Defendants immediately terminated Grimsrud-Barnes'

5

sales representative agreement. By its action, Defendants unilaterally eliminated Grimsrud-Barnes from the territory, and usurped all benefit of the substantial business Grimsrud-Barnes cultivated with its customers for Lucky Top's products.

19. At the time of termination, Defendants had just begun to ship 2022 business, so commissions on that business had not been paid, under the terms of the SRA. Unfortunately, in conjunction with this abrupt termination, Crocs announced that it would not pay Grimsrud-Barnes commission on most of its pending 2022 business.

20. At the time of termination, Lucky Top owed Grimsrud-Barnes $1.8 Million in commissions for business booked prior to termination.

21. Of these unpaid commissions, Plaintiff believes there are commissions due that relate to product booked and shipped before the last day of Grimsrud-Barnes' employment and constitute "commissions earned through the last day of employment" pursuant to Minn. Stat. §181.145, Subd. 1. The amount of said commissions is presently unknown to Plaintiff but believed to exceed $100,000.00 of the unpaid 2022 commissions noted in the preceding Complaint paragraph.

22. Grimsrud-Barnes has made demand for payment of these commissions, and the grace and penalty periods of Minn. Stat. §181.145 have expired, yet Defendant continue their refusal to pay Grimsrud-Barnes these commissions, and they remain unpaid.

### COUNT I.
### WRONGFUL TERMINATION.
### VIOLATION OF MINN. STAT. §325E.37.

23. Grimsrud-Barnes realleges each and every factual allegation of all prior complaint paragraphs as if fully restated herein.

24. Grimsrud-Barnes is an "independent sales representative" as that term is defined by Minn. Stat. §325E.37, Subd. 1.

25. At all times relevant to this matter, Defendants had in an "independent sales representative agreement" with Grimsrud-Barnes, as that term is further defined by Minn. Stat. §325E.37, Subd. 1.

26. Because Grimsrud-Barnes is a Minnesota citizen and Grimsrud-Barnes' territory for Defendants included the State of Minnesota, Grimsrud-Barnes has standing to assert claims for relief under the Act, pursuant to Minn. Stat. §325E.37, Subd. 6.

27. Because Grimsrud-Barnes has standing to assert claims under Minn. Stat. §325E.37, any contractual choice of law or venue term is void and ineffective, by operation of Minn. Stat. §325E.37, Subd. 7.

28. Because Defendants' immediate termination of Grimsrud-Barnes was not predicated on any of the six listed types of gross misconduct, specified in Minn. Stat. §325E.37, Subd. 1(b), Defendant have violated Minn. Stat. §325E.37, Subd. 2(b).

29. Alternatively, because Defendants' termination of Grimsrud-Barnes' independent sales representative agreement was not predicated on any "good cause," as that term is defined by the Act, their termination of Grimsrud-Barnes agency violates Minn. Stat. §325E.37, Subd. 2(a).

30. Alternatively, even if Defendants had "good cause" to terminate Grimsrud-Barnes independent sales representative agreement—which they did not—Defendants' failure to afford Grimsrud-Barnes both prior written notice of termination and the opportunity to cure the alleged good cause constitutes a further violation of Minn. Stat. §325E.37, Subd. 2(a).

7

31. As a direct and proximate result of Defendants' violations of Minn. Stat. §325E.37, Grimsrud-Barnes has suffered and will continue to suffer compensatory and consequential damages, which are accruing and recoverable under Minn. Stat. §325E.37, Subd. 5, in an amount to be determined at trial, but which will exceed $50,000.00.

## COUNT II.
## FAILURE TO PAY COMMISSIONS
## VIOLATION OF MINN. STAT. §325E.37

32. Grimsrud-Barnes realleges each and every factual allegation of all prior complaint paragraphs as if fully restated herein.

33. Defendants have failed and refused to pay commissions to Grimsrud-Barnes on sales of Lucky Top products.

34. In accordance with Minn. Stat. §325E.37, Subd. 4, Grimsrud-Barnes is entitled to commission on all purchase orders accepted by Lucky Top prior to the date of termination, regardless of whether it is shipped to the retail store customer.

35. The total amount of commissions due to Grimsrud-Barnes from Defendants is approximately $1.8 Million.

36. By their failure and refusal to pay the commissions described above, Defendants have further violated Minn. Stat. §325E.37, Subd. 4.

37. As a direct and proximate result of Defendants' further violation of Minn. Stat. §325E.37, Subd. 4, Grimsrud-Barnes has suffered compensatory and consequential damages, recoverable pursuant to Minn. Stat. §325E.37, Subd. 5, in an amount to be proven at trial, but which will likely exceed $50,000.00.

## COUNT III.
## BREACH OF CONTRACT.

38. Grimsrud-Barnes realleges each and every factual allegation of all prior complaint paragraphs as if fully restated herein.

39. At all times, there was a sales representative agreement between Grimsrud-Barnes and Defendants, under the terms of which Defendants agreed to pay Grimsrud-Barnes a commission of between 8% and 1% on the net shipped value of its regular sales to customers in its territory.

40. On or about December 29, 2021, Lucky Top expressly promised, orally and in writing, to pay Grimsrud-Barnes commissions on all pending orders for delivery through Q4 2022. That promise constitutes an amendment of the parties' written SRA, the consideration being Grimsrud-Barnes' procurement of said open orders and promise to continue representing Defendants through their merger process.

41. Under the terms of the parties' contract, Defendants owe, but have refused to pay, Grimsrud-Barnes commissions totaling $1.8 Million.

42. Alternatively, by their failure to pay Grimsrud-Barnes' commissions due under the SRA, Defendants have committed multiple breaches of the parties' contract.

43. As a direct and proximate result of Defendants' breaches of contract, Grimsrud-Barnes has suffered compensatory and consequential damages in an amount to be determined at trial, but which will exceed an additional $50,000.00.

## COUNT IV.
## VIOLATION MINN. STAT. §181.145.

44. Grimsrud-Barnes realleges each and every factual allegation of all prior complaint paragraphs as if fully restated herein.

45. Upon information and belief, of the total unpaid commissions due from Defendants to Grimsrud-Barnes, approximately $100,000.00 is attributable to goods shipped before the last day of employment, and thereby constitute "commissions earned through the last day of employment" pursuant to Minn. Stat. §181.145, Subd. 1.

46. Following termination, Grimsrud-Barnes made a written demand upon Defendants for the payment of all overdue commissions.

47. The grace and penalty periods specified in Minn. Stat. §181.145, Subd. 2, have expired, and Defendants continue their refusal to pay Grimsrud-Barnes' commissions earned though the last day of employment, in the amount noted above.

48. By their conduct, Defendants have violated the prompt commission payment provisions of Minn. Stat. §181.145, Subd.2, and in so doing have incurred the mandatory statutory penalty, specified in Minn. Stat. §181.145, Subd. 3.

49. As a direct and proximate result of Defendants' further violation of Minnesota law, Grimsrud-Barnes has suffered compensatory and consequential damages in an amount to be determined at trial, but which will exceed an additional $100,000.00, plus the mandatory statutory penalty, costs, and attorneys' fees.

**WHEREFORE**, Grimsrud-Barnes respectfully requests the Court enter an order for judgment, against both Defendants, jointly and severally, in its favor for the following relief:

1. On Count I of its Complaint, the immediate reinstatement of Grimsrud-Barnes as Defendants' independent sales representative, per Minn. Stat. §325E.37, Subdivision 5;

2. In addition, on Count I of its Complaint, an award of compensatory and consequential damages from Defendants, jointly and severally, sufficient to compensate Grimsrud-Barnes for commissions lost from the date of Defendants' illegal termination of its independent sales representative agreement to the date of reinstatement, per Minn. Stat. §325E.37, Subd. 5, in an amount to be proven at trial, but which will likely exceed $50,000.00;

3. Alternatively, on Count I of its Complaint, in the event reinstatement of Grimsrud-Barnes' independent sales representative agreement is not possible, an award of further compensatory and consequential damages in favor of Grimsrud-Barnes against Defendants, jointly and severally, equivalent to the future commissions Grimsrud-Barnes will lose as the result of Defendants' illegal termination of its sales representative agreement, in an amount to be proven at trial, but which will exceed an additional $50,000.00;

4. On Counts II and III of its Complaint, an award of compensatory and consequential damages to Grimsrud-Barnes, against Defendants, jointly and severally, in the form of unpaid commissions and other damages, for their violation of Minn. Stat. §325E.37, Subd. 4 and multiple breaches of the parties' contract, in an amount to be determined at trial, but which will likely exceed an additional $50,000.00;

5. On Count IV of its Complaint, an award of compensatory and consequential damages to Grimsrud-Barnes against Defendants, jointly and severally, for their violation of the prompt commission payment provisions of Minn. Stat. §181.145, including unpaid commissions and the mandatory statutory penalty provided therein, in an amount to be proven at trial, but which will exceed an additional $50,000.00;

6. On all Complaint Counts, award of Grimsrud-Barnes' costs, disbursements, statutory interest, and attorneys' fees, against Defendants, jointly and severally, per Minn. Stat. §§325E.37 and 181.145 or as otherwise allowed by law; and

7. Such further relief as the Court deems just and reasonable.

Respectfully Submitted:

Dated: January 8, 2024.                     *Taylor Fricton, PLLC*
                                            By: */s/ D. Clay Taylor*
                                            D. Clay Taylor (#204857)
                                            7300 Metro Blvd., Suite 350
                                            Edina, MN 55439
                                            Phone: 612.904.7376
                                            Email: clay@replawyer.com

                                            **ATTORNEY FOR PLAINTIFF
                                            GRIMSRUD-BARNES, INC.**

## ACKNOWLEDGMENT.

The undersigned does hereby acknowledge that costs, disbursements and attorneys' fees and witness fees may be awarded to the party opposing this action or motion pursuant to Minn. Stat. §549.211.

Dated: January 8, 2024.                     *Taylor Fricton, PLLC*
                                            By: */s/ D. Clay Taylor*
                                            D. Clay Taylor (#204857)
                                            7300 Metro Blvd., Suite 350
                                            Edina, MN 55439
                                            Phone: 612.904.7376
                                            Email: clay@replawyer.com

                                            **ATTORNEY FOR PLAINTIFF
                                            GRIMSRUD-BARNES, INC.**